Curia, per

Withers, J.
The question in this cause arises upon the following provision of the Act commonly called the County Court Act, passed in 1785, to wit: “That all powers of attorney for confessing or suffering judgment to pass by default, or otherwise, and all general releases of error, made or to be made, by any person or persons whatsoever, within this State, before action brought, shall be, and are hereby declared to be, absolutely null and void: and if any attorney shall appear to confess judgment for any defendant in any court of record within this State, in .consequence thereof, such attorney, for every such offence, shall forfeit and pay the sum of ten pounds, lawful mo *268 ney, to be recovered by any person who will inform and sue for the same, and shall moreover be liable to an action for damages, at the suit of the party aggrieved.” (7 Stat. 232.)
Some dicta have appeared in our cases, but no case bearing as authority on the point has been found. In Dial and Henderson vs. Farrow, (1 Sp. 114,) the general remark was made “that the Act of 1785 declares all powers of attorney to confess judgment before suit brought, to be void,” leaving, of course, confessions after suit'brought, to the common law. In Otis Mills & Co. vs. Dixon & Mills, (MS. January, 1849, which ought to be published, and it was- so directed,) Judge Richardson regarded “ as settled and conceded” the proposition “that by our Act of 1785 all powers of attorney to confess judgment before suit brought are void,” and he cited the above case from Spears. But in neither of these cases was the precise question here raised by the facts; for in neither was there adduced or known to exist any power (or warrant) of attorney. The question was in both cases on implied authority: from partnership in the one case, and from circumstances in the other.
. We cannot rest on these dicta as authority, however we may respect them. We must, therefore, resort to the approved means, so far ás we can reach them, of expounding statutes.
In the English sense, a warrant of attorney is an authority, addressed to one or more attorneys therein mentioned, authorizing them to appear in either of the Courts of Westminster, and to confess a judgment in favor of some particular person in an action of debt, and usually contains a- stipulation not to bring any writ of error or to lile a bill in Equity, so as to delay him. It was resorted to for compromise or to secure to a creditor priority over others. This system soon led to abuses, and various precautions were ordered by the Courts. It became particularly mischievous as regarded those who were imprisoned or otherwise harrassed by stringent process. It was required that a defeasance or a memorandum of its substance should be endorsed on the same paper or parchment on which the warrant was written: that every warrant should be voluntary, and founded on a good and *269 not a fraudulent, immoral, or usurious consideration: that a prisoner could not waive the presence of his own attorney at the time of the execution of the warrant, to the end that he might be under advice and protection: that without this the same was void, and the sheriff or bailiff- liable to severe punishment: that the like protection in this respect should be extended to prisoners abroad: the exceptions being where the warrant was given to a person at whose suit defendant was not in custody, or where a prisoner was confined on criminal process, or on process of execution ; for in such cases he was not supposed to be likely to confess more than was' really due, or act under duress, as might be the case where the attorney to be trusted represented the creditor. Warrants of attorney must be filed. Many more restraints and regulations by Act and rule of Court might be recited, but enough appears to shew that there were evils enough springing from this source, known to the profession in 1785, to account for the legislation which we find, and to afford some clue to the view which prevailed as to the evil, and the extent of the remedy.
It is supposed here that the powers of attorney executed within this State were alone prohibited. The mischief was more extensive than that idea suggests. We have seen that the precautions of the Courts of England extended to those confined without the realm. If duress, fraud, security on various immoral and unlawful considerations, the power of obtaining by secret means a priority fatal to rival creditors, had grown out of warrants of attorney, and had caused rules and statutes to circumvent them, the policy embraced as well such an instrument and contrivance executed abroad as that executed at home. If, therefore, we have hit upon the reason of the law, it ought to have an application coextensive, unless this be prohibited by the language. That is not as perspicuous as all statutory language should be, though not much less so than it usually is. It is quite manifest that an attorney is punishable if he appears “ in any Court of record within this State” for “any defendant” “inconsequence thereof” But this does not conclude the question; for it remains to be asked, what does “thereof” refer to ? It refers to the power *270 of attorney, before described and declared void: and leaves us still to ascertain what that is. The words “within this State” do follow immediately the words “ any person or persons whatsoever,” and it is certainly true that these last alone might be plausibly held to be qualified by the former. But if we carry with us the guide which we suppose the reason of the law to afford, there is a strong reason to read the statute (so far as powers of attorney are concerned,) as follows: “All powers of attorney for confessing or suffering judgment to pass by default or otherwise} within this State, made or to be made before action brought, by any person or persons whatsoever, shall be voidand language in conformity follows in the next member of the section, to wit: “in any Court of record within this State.” We think no cardinal rule of interpretation is violated by such reading: that it is almost the necessary construction, because the other would lead to something very near to an absurdity, to wit, that if a power of attorney, executed within this State, or only by a person within this State, is declared void, it would follow that a man in Hamburg has only to cross a bridge to Augusta, and the transaction, void on one side of the river, is good on the other.
We are driven to conclude that the Act aimed at any power of attorney, prior to the bringing of action, to be used in confessing judgment, by proxy, in our Courts, and was indifferent to the place of its execution,' or the residence or location of its author.
The motion to reverse the decision, directing the suggestion to be quashed, is granted.
O’Neall, Evans, Wardlaw, Frost and Whitner, JJ., concurred.

Motion granted.